IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN S. I., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )     Case No. 4:23-CV-258-JFJ |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Steven S. I. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 50-year-old male, applied for Title XVI supplemental security income benefits on September 1, 2021, alleging a disability onset date of August 4, 2021. R. 17, 176-181. Plaintiff claimed he was unable to work due to conditions including blind or low vision, degenerative disc disease in neck, arthritis, trauma induced glaucoma, high blood pressure, depression, and anxiety. *See* R. 193. Plaintiff's claim for benefits was denied initially on December 28, 2021, and on reconsideration on May 8, 2022. R. 56-76. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on January 12, 2023. R. 34-55. The ALJ issued a decision on February 16, 2023, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy. R. 17-29. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 1, 2021. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: glaucoma; degenerative disc disease of the spine; major depressive disorder; generalized anxiety disorder; obesity; and low vision. *Id.* The ALJ found his impairment of hypertension to be non-severe. R. 19-20. At step three, the ALJ found that Plaintiff

3

had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 20. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace, and he had moderate limitations in the two areas of (1) interacting with others and (2) adapting or managing oneself. R. 21.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of light work except as follows:

> [H]e can sit, stand, or walk six hours out of an eight-hour day. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can perform no climbing of ladders, ropes, scaffolding; no unprotected heights, dangerous machinery, open bodies of water nor open flames; and no walking on uneven surfaces. The claimant is limited to occasional reaching and working overhead with no limitation in reaching in all other directions. He can perform simple and detailed, but no complex tasks. Repetitive, routine, and rote. The claimant can have occasional contact with coworkers and supervisors, no contact with the general public, working with things rather than people. He would be able to remain on task and attentive to duties for two hours before needing a 15-minute break.

R. 22. At step four, the ALJ found that Plaintiff had no past relevant work. R. 27. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform the unskilled light jobs of Marker, Sub Assembler, and Small Products Assembler I. R. 27-28. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), except her testimony regarding limitations in overhead reaching was based on her education and experience. R. 28. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises three points of error in his challenge to the denial of benefits, which the Court reorganizes for clarity: (1) the RFC failed to account for Plaintiff's glaucoma and low vision;

4

(2) the ALJ erroneously determined the "paragraph B" mental findings at step three; and (3) the RFC assessment was not supported by substantial evidence. ECF No. 7.

IV.     Analysis

    A.     **RFC Accounted for Plaintiff's Low Vision and Glaucoma**

Plaintiff argues the ALJ failed to incorporate any visual limitations in the RFC to account for his severe impairments of glaucoma and low vision. Plaintiff's argument fails. The ALJ stated in the decision that the RFC incorporated "additional postural and environmental limitations" to account for Plaintiff's reduced muscle strength and low vision. R. 26. Plaintiff ignores this part of the decision, which explains the RFC limitations of no exposure to unprotected heights, dangerous machinery, open bodies of water or open flames, and no walking on uneven surfaces. R. 22.

Plaintiff further argues he could not perform any of the step-five jobs based on their visual requirements. Most specifically, Plaintiff argues he could not perform the job of Small Products Assembler, because his decreased left eye vision of 20/50 could interfere with the job requirement of "accommodation" of the eyes.[2] The job of Small Products Assembler requires visual accommodation "frequently," meaning it exists from 1/3 to 2/3 of the workday. *See* DOT 706.684-022. Plaintiff points to his April 2022 vision exam in support of his visual limitations (R. 289-294). However, the ALJ discussed this exam, which noted Plaintiff had fully functional right-eye vision and reduced left-eye vision. R. 24-25 (citing R. 289-294). Plaintiff cites to no records indicating he needed an accommodation or additional visual restriction based on his visual limitations, and the Court identifies no error in the ALJ's visual limitations in the RFC. Correspondingly, the Small Products Assembler job need not be excluded from the step-five jobs.

---

[2] Visual accommodation is "[t]he ability to look from near to far quickly without any blur at distance or near." American Optometric Association, *Accommodative dysfunction*, https://www.aoa.org/healthy-eyes/eye-and-vision-conditions/accommodative-dysfunction?sso=y (last visited May 13, 2024).

As a result, the Court will not address Plaintiff's follow-up argument that an insignificant number of jobs remains if the Small Products Assembler job is excluded.

### B. ALJ's Step-Three "Paragraph B" Findings were Proper

Plaintiff argues the ALJ's "paragraph B" findings at step three were improper, because they differed from the mental findings of the state agency psychological reviewers. At step three, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace, and he had moderate limitations in the two areas of (1) interacting with others and (2) adapting or managing oneself. R. 21. Initial agency psychological reviewer James Scott, PsyD, found moderate limitations in the two areas of (1) understanding, remembering, or applying information and (2) interacting with others; mild limitations in the area of concentrating, persisting, or maintaining pace; and no limitations in the area of adapting or managing oneself. R. 58. Reconsideration agency psychological reviewer Ryan Scott, Ph.D., found moderate limitations in the two areas of (1) concentrating, persisting, or maintaining pace and (2) interacting with others; and mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself. R. 69. Plaintiff contends the ALJ was required to explain these differences from the ALJ's own findings.

Plaintiff's argument fails. While the ALJ did not explain why his "paragraph B" findings differed from those of the agency psychological reviewers, the ALJ did explain his reasoning for finding their RFC opinions unpersuasive. R. 26. Specifically, the ALJ explained that the agency consultants' findings were inconsistent with Plaintiff's "inability to interact with the general public due to his anxiety, his preference with working with things rather than people, and his difficulties handling stress and changes in routine." *Id.* (citing R. 287, 320, hearing testimony). Plaintiff cites no authority, and the Court is aware of none, to indicate the ALJ was obligated to explain differences between his own and the agency reviewers' "paragraph B" findings in this scenario.

6

### C. Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff argues the ALJ's physical and mental RFC was unsupported by substantial evidence, because the ALJ did not adopt any of the opinions of the agency reviewers or the mental consultative examiner. The ALJ found the opinions of agency medical reviewers Walter Bell, M.D., and James Metcalf, M.D., to be persuasive but found that "additional postural and environmental limitations are appropriate" to account for Plaintiff's reduced muscle strength and low vision. R. 26. The ALJ found the opinions of agency psychological reviewers Dr. James Scott and Dr. Ryan Scott to be unpersuasive, as the ALJ found further social, stress-related, and adaptability restrictions were necessary. *Id.* The ALJ also found the opinion of psychological consultative examiner Kaycie Pella, Ph.D., to be unpersuasive, as it was vague in its use of certain terms, did not clearly delineate Plaintiff's specific functional limitations, and was inconsistent with Plaintiff's "inability to interact with the general public and his difficulties handling stress and changes in routine." R. 26-27.

Plaintiff contends the ALJ was required to rely on one or more medical source opinions or agency findings to form the basis of the RFC. Plaintiff points to no other records in support of a more restrictive RFC than the ALJ found. Plaintiff also does not suggest any additional mental or physical RFC limitations that should have been included based on the record.

Plaintiff's argument is unavailing. Contrary to Plaintiff's argument, the ALJ was not required to accept or adopt any prior medical source opinions or agency findings. The ALJ's RFC need not correspond directly to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category"). *Cf. Natalie L. F. v. Kijakazi*, No. 20-CV-376-JFJ, 2022 WL 265870, at *4-5 (N.D.

Okla. Jan. 28, 2022) (reversing where ALJ failed to properly evaluate medical source opinion, failed to supply sufficient RFC narrative, and misstated record regarding claimant's mental health symptoms); *Eagle v. Kijakazi*, No. CIV-22-70-PRW, 2022 WL 18635525, at *5-6, (W.D. Okla. Aug. 30, 2022) (reversing where ALJ found no medical opinion fully persuasive and source of RFC limitations was unclear).  Plaintiff further fails to identify any specific harm resulting from the ALJ's RFC limitations.  *See Shinseki v. Sanders*, 556 U.S. 396, 408-410 (2009) (burden of showing harmful error normally falls upon party attacking agency's determination).

Plaintiff identifies no legitimate error in the ALJ's determination of the RFC.  Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 22nd day of May, 2024.

*/s/ Jodi F. Jayne*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**